Stewart, J.
In this court defendant argues, first, that because of plaintiff’s unlawful conduct he is not entitled to recover any damages against defendant, or, second, in the alternative, that the case should have been submitted to the jury as to whether defendant had used more force than reasonably necessary to repel the felonious conduct of plaintiff, and that it was error for the court to hold, as a matter of law, that plaintiff could recover from defendant his compensatory damages.
There is a distinction in the rule of law with reference to the force that an owner of property may use in repelling trespassers and those bent upon felony.
*124 In the annotation found in 25 A. L. R., 509, it is stated:
“The modern rule as to homicide in defense of the habitation seems to be that if an assault on a dwelling and an attempted forcible entry are made under such circumstances as to create a reasonable apprehension that it is the design of the assailant to commit a felony or to inflict on the inmates a personal injury which may result in the loss of life or great bodily harm, the danger that the design will be carried into execution being imminent and present, the lawful occupant of the dwelling may lawfully prevent the entry, even by the.taking of the life of the intruder.”
That rule, however, in its full effect is not applicable with reference to the protection of one’s property against trespassers where the dwelling house is not involved, and this court has held that “a person is not justified in taking human life or inflicting bodily harm upon the person of another by means of traps, spring guns or other instrumentalities of destruction unless, as a matter of law, he would have been justified had he been personally present and taken the life or inflicted the bodily harm with his own hands.” State v. Childers, 133 Ohio St., 508, 14 N. E. (2d), 767, paragraph three of the syllabus.
In that case Childers was indicted for shooting with intent to wound. He had set a spring gun in his melon patch which was set off and wounded a 14-year old'boy who was a mere trespasser upon Childers ’ land to commit at most a petit larceny by eating his melons.
In the opinion in the Childers case it is stated:
“While a person has a right to protect his property from a trespass, and, after warning or notice to the trespasser, use such force as is reasonably necessary so to do, he cannot unlawfully use firearms to expel the intruder where he has no reasonable ground to fear the trespasser will do him great bodily harm.”
In the Childers case the spring gun was set in the *125 open, and the boy injured was not only a mere'trespasser and melon-eater but, as he testified, he thought the melon patch and the melons belonged to his relative whom he was visiting at the time.
Our query in the present case concerns the right to use force or set traps for the protection of property in a building against one feloniously breaking and entering that building for the purpose of stealing the property therein.
The only case we have found which is nearly like the present one is that of Scheuerman v. Scharfenberg, 163 Ala., 337, 50 So., 335, wherein the court said:
“This appeal presents but one question, which is as novel as it is difficult. The question is this: Is the owner of a storehouse, in which goods and other valuables are kept by him for sale and deposit liable in trespass to a would-be burglar of such store, who is shot by means of a spring gun placed in the store by the owner for the purpose of shooting persons who might attempt to burglarize it — the gun being discharged by the would-be burglar while in the attempt to enter, but after the breaking is completed? We have been unable to find any case exactly like it, and but few kindred ones.”
The Alabama court further said:
“It will be observed, from! these various decisions, that while a man may set spring guns and mantraps upon his own premises to protect them in the nighttime from thieves and burglars, he must see to it that such guns or traps do not inflict injury upon those who go thereon for lawful purposes, and that one has no right to defend his property against mere trespassers by means of such deadly agencies. Liability as to mere trespassers who have no felonious intent depends also upon notice to them of the dangerous agency.
i ( * # *
“A man’s place of business (such as the defendant’s *126 store in this case) is pro hac vice his dwelling, and he has the same' right to defend it against instrusions, such as burglary, as he has to protect his dwelling. * * * Burglary of a storehouse, such as the one attempted to be burglarized in this case, or in which goods, etc., are kept for sale or in deposit, is by statute made a felony punishable as if it were of a dwelling. * * * Applying these principles of law, we hold that the owner of such a store is not liable in trespass to-a would-be burglar thereof, who is shot by means of a spring gun by such owner placed in the store for the purpose of shooting persons who might attempt to burglarize it; the gun being discharged by the would-be burglar in attempting to enter.”
In the Childers case, supra, it is stated in the opinion:
“In accordance with the great weight of authority, one who sets a spring gun or trap does so at his peril. If it is set in a dwelling house and prevents the entrance of a felon, the. justification may be sufficient to acquit the owner. If on the other hand it inflicts death or great bodily harm on an innocent person, or one who is a mere trespasser, the one who set the trap' must suffer the consequences. He is presumed to intend the natural and probable results of his voluntary act. It becomes as much of an assault on another as if he was personally present and pulled the trigger. ’ ’
What was the liability of the defendant in the present case? If we followed the Scheuerman case defendant would not be liable at all, although the reasoning in that case is based upon the premise that a man’s storehouse is in the same category as his dwelling and that the breaking and entering was in the night season.
It seems to us that the rule laid down in the Childers case, supra, should be applied to the present cáse, although the circumstances of the present case are much more aggravated, so far as the plaintiff is concerned, than those in the Childers case.
*127 In the present cáse plaintiff was. approximately 19 and % years old. He had had experience in breaking and entering buildings. He was a trespasser on defendant’s property, and with a metal bar broke the lock and opened the door of defendant’s warehouse for the purpose, as he himself testified, of entering the premises and stealing property deposited therein. He knew he was violating the law of Ohio and that he was in danger of bodily harm while in the commission of the act he was undertaking.
Under Section 12442, General Code, for such act plaintiff was liable to be indicted, convicted, and imprisoned in the penitentiary from one to five years.
Defendant had planted the dynamite three feet or more in the ground and testified that he had long been familiar with the, use of dynamite and in his opinion the amount he had planted and the way in which he had planted it would not result in injury to a would-be thief breaking ■ and entering the premises but that an explosion would be caused which would result in a great scare.
Defendant’s warehouse had been broken and entered several times before.
There was no testimony to combat that of defendant as to his belief and confidence that the trap he had set would not physically harm an intruder, and we have nothing before us to contradict the good faith of defendant’s belief and action except the common knowledge that dynamite is inherently, a dangerous substance.
If defendant had caught plaintiff in the act of breaking the lock on the warehouse door and entering therein, would he have been justified in exploding at plaintiff an amount of dynamite having the same explosive effect as that which he had buried in an effort to scare a would-be thief away or repel his felonious intrusion?
It might well be argued that if plaintiff had been a mere trespasser or had been pilfering something out *128 side the warehouse and had been injured by the explosion, the court could properly have held as a matter of law that more force had been used by defendant than was necessary to- repel plaintiff’s trespass and that no force was justified until plaintiff had been warned to get off the premises. But plaintiff’s conduct was much more serious than a mere trespass in the open or a mere petit larceny in a field or meadow. He was engaged in the commission of a felony, punishable by imprisonment in the penitentiary, in breaking and entering a man’s building where valuable property was stored in order that he, plaintiff, might steal it.
We do not believe that under such circumstances plaintiff was entitled to any affirmative warning. A lock on a door is sufficient warning to any prospective thief that he is not to feloniously break that lock and enter the building.
Assuredly, under the circumstances of this case, the court had no right to hold as a matter of law that defendant was liable to plaintiff, as the defendant’s good faith in using the force which he did to protect his building and the good faith of his belief as to the nature of the force he was using were questions for the jury to determine- under proper instructions.
Under our American system of justice everyone is entitled to equal protection of the law and to equal enforcement of his rights under the law, but we are not willing to say that a man, in the commission of a felony, is a. favored creature in the eyes of the law and that he may recover for injuries done to him by an owner of property in its protection, which the former is feloniously trying to break and enter for the purpose of stealing, without a jury passing upon the questions whether the property owner used more force than reasonably necessary to repel and prevent the felony and as to the good faith of the owner in the measures he took for such prevention.
*129 One sure legal principle is that the owner of property is entitled to use as much force as is reasonably necessary to protect it from those who would feloniously steal it, and the trier of the facts need not meticulously measure that force as to the exact quantum or amount in determining whether it is excessive.
Even in the Childers ease the question was left to the jury whether Childers had used excessive force in repelling the trespass and petit larceny of the boy who went into the melon patch.
The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for further proceedings.

Judgment reversed.

Weygandt, C. J., Zimmerman, Middleton, Matthias, and Hart, JJ., concur.