207 So.2d 670

**Russell HURLEY**

v.

**STATE.**

**3 Div. 267.**

Court of Appeals of Alabama.

Feb. 20, 1968.

Robt. E. Coburn, Jr., Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant was convicted of the offense of grand larceny. His punishment was fixed at imprisonment in the penitentiary for a term of three years.

For the state, Arbery Vernon Hughes testified that on September 30, 1966, he was working the 2:30 to 10:30 p. m. shift as station attendant for the Southern Oil Storage Company on Bell Street in Montgomery. About ten minutes to ten as he was counting his money and filling out his work records for the man who would relieve him at 10:30, the defendant ran into the station and grabbed the paper money ($208.00) from the desk. The defendant then took Hughes to the ladies restroom and tied him up. "He tied my hands behind me, and my feet, and put a gag in my mouth." Hughes testified it took him fifteen or twenty minutes to break the ropes on his legs. He got the door open and asked a man to untie him and then he called the police and passed out. He testified defendant first came to the filling station at 3:30; bought gas and talked a few minutes.

On cross examination Hughes testified he first told the police two colored men had tied him up. He did this because defendant "made a threat when he got out he would see to me." Hughes stated he became acquainted with defendant when they were inmates of Draper Prison. Witness was then serving a sentence for the offense of grand larceny. He was also indicted for embezzlement of the money involved in this case.

Gene Schuts testified he drove into the Southern Oil filling station and saw Mr. John Hooper untying Mr. Hughes, who had a gag in his mouth.

Clara Lee Morrison testified that on the night in question she was with Hurley and they went to the Southern Oil filling station about dark and again later that night. The second time she remained in the car, which was parked in the back and could not see the front of the station or the ladies restroom.

R. B. Daugherty, a detective with the Montgomery Police Department, testified that while questioning Hurley at police headquarters, Hurley inquired as to whether "if he got the money back and gave the money back to the man, if we could just drop the charges and not have a case against him." Proper predicate under the requirements of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and as to promises or threats was laid for the admission of this statement. The witness stated the defendant did not admit taking the money.

On cross examination this witness testified the witness Hughes first told the officers two men bound him and took the money but he later changed his story.

For the defendant, Clifford King, a detective with the Montgomery Police Department, testified he investigated the charge against defendant and questioned Vernon Hughes. Hughes in his original statement said two colored men tied him up and put him in the ladies restroom, but he changed his story, and said defendant did it. Defendant denied taking the money. He asked "if he paid the money back would the man sign a warrant."

The defendant testified he went to the filling station on Bell Street about 4:00 or 4:30 that afternoon and bought gas. Clara Morrison was with him. He came back to the filling station about eight o'clock because Hughes told him the first time he stopped there to come back later and he would pay him the $10.00 he owed him. He parked at the side of the station to get out of the driveway. Hughes asked him to run up the street and get him a couple of beers, which he did. Defendant testified that because he was on parole and did not want to get in any trouble he offered to pay back whatever amount of money the man lost, but that he did not take the money.

On cross examination the defendant testified he was convicted of robbery in 1963 and was sentenced to ten years in the penitentiary; that he did not offer to pay back the same money the man lost but offered to get whatever amount of money the man lost.

Title 15, Sec. 307, Code 1940, provides that a conviction of felony cannot be had on the uncorroborated testimony of an accomplice.

■ The fact that the witness Hughes was indicted for the same offense did not per se make him an accomplice. Sweeney v. State, 25 Ala.App. 220, 143 So. 586; Welch v. State, 35 Ala.App. 643, 51 So.2d 905.

■ If there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible of different inferences on that point, the question is one for the jury and not for the court. Horn v. State, 15 Ala.App. 213, 72 So. 768; Sweeney v. State, supra.

■ Moreover, the testimony of Clara Morrison tended to corroborate Hughes, even if he was found to be an accomplice. There was no error in denial of the motion to exclude the state's evidence or the refusal of the general affirmative charge.

■ Requested Charge 3 was not in proper form and for that reason, if for no other, was properly refused. Love v. State, 23 Ala.App. 363, 125 So. 685.

Court appointed counsel represented defendant at the trial of this cause and the same counsel was appointed to represent him on this appeal. Thereafter the court withdrew the appointment of original counsel and entered an order appointing present counsel to represent defendant on appeal. The trial court stated the reason for the substitution of attorneys was because of a letter the judge received from defendant asking for the appointment of another attorney and because of the request of the first attorney that another attorney be appointed because defendant refused the advice of counsel and showed his dissatisfaction with his appointment.

■ We find no merit in appellant's insistence that he was deprived of his constitutional right to appointment of counsel by the trial court's action. The case of Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, (1967) is not applicable here.

■ The insistence that trial counsel was inadequate because of his failure to move for a new trial is likewise without merit. In State v. Franklin, 379 S.W.2d 526, (Mo. 1964), the court said:

"As to the failure to file a motion for new trial that may have been the result of the exercise of legal judgment on the part of the one person who was present at the trial and had personal knowledge of what occurred and who was in the best position to know and determine whether a motion for a new trial should have been filed. The failure to file a motion for new trial, standing alone, does not imply inadequate representation, let alone establish it."

We find no reversible error in the record. The judgment is due to be and hereby is affirmed.

Affirmed.